FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 14, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JERALD A. A., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | NO: 2:22-CV-0315-RMP <br><br> ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS |

BEFORE THE COURT, without oral argument, are briefs from Plaintiff Jerald A.A.[1], ECF No. 11, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 15. Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the Commissioner's denial of his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). *See* ECF No. 11 at 2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and middle and last initials.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 1

Having considered the parties' briefs, ECF Nos. 11 and 15; Plaintiff's reply, ECF No. 16; the administrative record; and the applicable law; the Court is fully informed. For the reasons set forth below, the Court grants judgment for Plaintiff, reverses the decision of the Commissioner, and remands the case for further administrative proceedings consistent with this decision.

## BACKGROUND

*General Context*

Plaintiff protectively filed for DIB on approximately June 17, 2019, alleging an onset date of May 19, 2019. *See* Administrative Record ("AR")[2] 39, 250–51. Plaintiff was 44 years old on the alleged disability onset date and asserted that he was unable to work due to a prior head injury that caused a brain bleed, bleeding disorders, complications from childhood leukemia, depression, chronic liver disease, hepatitis C, and heart murmur. AR 276. Plaintiff alleged that he stopped working prior to the alleged onset date due to his conditions. AR 276. Plaintiff's application was denied initially and upon reconsideration, and Plaintiff requested a hearing. AR 153–55, 156–58, 160–61. Administrative Law Judge ("ALJ") Marie Palachuk heard Plaintiff's claim on October 19, 2021. *See* AR 84–86. Plaintiff was present and represented by attorney Jacqueline Justice. AR 86. The ALJ heard from vocational expert ("VE") Franklin Corbin; medical expert regarding Plaintiff's physical

---

[2] The AR is filed at ECF No. 9.

limitations, Nicholas Geneve, D.O.; medical expert regarding Plaintiff's mental health limitations, Tonia Porchia, Psy.D.[3], and from Plaintiff. AR 86–115. ALJ Palachuk issued an unfavorable decision on November 26, 2021. AR 15–30.

**ALJ's Decision**

Applying the five-step evaluation process, ALJ Palachuk found:

**Step one:** Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. AR 41. Plaintiff has not engaged in substantial gainful activity since May 19, 2019, the alleged onset date. AR 41 (citing 20 C.F.R. § 404.1571 *et seq*).

**Step two:** Plaintiff has the following severe impairments, pursuant to 20 C.F.R. §§ 404.1520(c): acute deep venous thrombosis ("DVT"); liver cirrhosis; chronic hepatitis C; degenerative disc disease of lumbar spine, mild, new onset March 2021; anemia; obesity with a body mass index of 35; and depressive disorder. AR 41–42. In addition, the ALJ recognized that "throughout the course of treatment and evaluations, [Plaintiff] has exhibited a constellation of symptoms that resulted in varying mental diagnoses or assessment instead of, or in addition to, the above-listed severe impairments depending on his presentation." AR 41–42. The ALJ memorialized that she considered Plaintiff's psychological symptoms and their

---

[3] While the transcript refers to this medical expert as "Tanya Porchay," her curriculum vitae indicates that her name is "Tonia Porchia." *Compare* AR 96 *with* 1397.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 3

1  effect on Plaintiff's functioning together, regardless of any diagnostic label attached

2  to them, and found that depressive disorder "best represents" Plaintiff's severe

3  mental symptoms and impairment. AR 42. The ALJ further found that Plaintiff has

4  several non-severe impairments that have not severely limited Plaintiff's ability to

5  perform basic work activities for a period lasting at least twelve consecutive months:

6  hypertension; history of subdural hematoma (head injury in fall with bleeding in the

7  brain) and treatment with surgery; and a remote history of juvenile leukemia, in

8  remission. AR 42.

9        **Step three:** The ALJ concluded that Plaintiff does not have an impairment or

10 combination of impairments that meet or medically equal the severity of one of the

11 listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 43 (citing 20

12 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). The ALJ memorialized that

13 Plaintiff's acute DVT and related symptoms do not meet the criteria under listing

14 4.11 for chronic venous insufficiency of a lower extremity with incompetency or

15 obstruction of the deep venous system. AR 43. Next, the ALJ found no evidence in

16 the record that Plaintiff has anemia with a severity meeting the listing 7.05 criteria

17 for hemolytic anemias. AR 43. Nor does the record establish that Plaintiff's liver

18 cirrhosis and/or chronic hepatitis C meet any listing under section 5.00 for digestive

19 system impairments, including listing 5.05 for chronic liver disease. AR 43. The

20 ALJ further found that Plaintiff's "impairment secondary to lumbar spine

21 degenerative disc disease with low back pain" does not meet listing 1.15 for

disorders of the skeletal spine resulting in compromise of a nerve root(s) or 1.16 for lumbar spinal stenosis resulting in a compromise of the cauda equina. AR 44. The ALJ further considered whether the functional limitations caused by obesity medically equal a listing, considered alone or in combination with other impairments and found that Plaintiff's physical examinations have not shown complications or limitations stemming from Plaintiff's weight being at obesity classification level. AR 44–45. The ALJ cited to the record in considering each of Plaintiff's physical impairments and noted that "board-certified osteopathic physician and impartial medical expert" Dr. Geneve testified at the hearing that Plaintiff's physical impairments, considered individually and in combination" do not meet or equal any listing. AR 45.

Regarding Plaintiff's mental impairments, the ALJ considered listing 12.04 for depressive, bipolar, and related disorders. AR 45. The ALJ considered whether Plaintiff's impairments satisfy the "paragraph B" criteria, requiring at least one extreme or two marked limitations in four broad areas of functioning. AR 45–46. The ALJ found Plaintiff moderately limited in understanding, remembering, or applying information; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself. AR 45–46. The ALJ found Plaintiff only mildly limited in interacting with others. AR 45–46. Therefore, the ALJ found that the "paragraph B" criteria are not satisfied and further found that the "paragraph C" criteria are not present. AR 46.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 5

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff, through the date last insured, had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following exceptions:

> He is limited to occasional operation of foot control pedals/push/pull with the left lower extremity and frequent operation of foot controls with the right lower extremity. He can never climb ladders, ropes[,] or scaffolds, only occasionally stoop, kneel, and crawl, and frequently balance, crouch, and climb ramps/stairs. He must avoid concentrated exposure to extreme temperatures, humidity, vibration, and respiratory irritants, and avoid more than moderate exposure to hazards such as unprotected heights and moving mechanical parts. He is able to understand, remember and carry out simple, routine tasks. He is able to maintain concentration, persistence[,] and pace on simple routine tasks for 2-hour intervals between regularly scheduled breaks. He needs a predictable environment with simple routine changes.

AR 47.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, "[h]owever, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 48.

**Step four:** The ALJ found that Plaintiff is unable to perform any past relevant work. AR 58 (citing 20 C.F.R. § 404.1565).

**Step five:** The ALJ found that Plaintiff has at least a high school education; was 44 years old, which is defined as a younger individual, age 18-49, on the alleged

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 6

1  onset date; and that transferability of job skills is not material to the determination of

2  disability because Plaintiff's past relevant work is unskilled.  AR 58 (citing 20

3  C.F.R. §§ 404.1569 and 404.1569a).  The ALJ found that given Plaintiff's age,

4  education, work experience, and RFC, there are jobs that exist in significant

5  numbers in the national economy that Plaintiff can perform.  AR 58.  Specifically,

6  the ALJ recounted that the VE identified the following representative occupations

7  that Plaintiff could have performed with the RFC: bench assembler (light, unskilled,

8  with around 100,000 jobs nationally); bakery worker (light, unskilled, with around

9  40,000 jobs nationally); and bottle line attendant (light, unskilled work, with around

10 65,000 jobs nationally).  AR 59.  The ALJ concluded that Plaintiff was not under a

11 disability within the meaning of the Act from the alleged onset date of October 28,

12 2013, through the date last insured.  AR 37.

13     Plaintiff sought review of the ALJ's decision in this Court, represented by

14 attorney Rosemary Schurman.  ECF No. 1.

## LEGAL STANDARD

***Standard of Review***

17     Congress has provided a limited scope of judicial review of the

18 Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

19 Commissioner's denial of benefits only if the ALJ's determination was based on

20 legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d

21 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

1  determination that a claimant is not disabled will be upheld if the findings of fact are

2  supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

3  1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere

4  scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

5  1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

6  1989).  Substantial evidence "means such evidence as a reasonable mind might

7  accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

8  401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

9  [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark

10  v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the

11  record, not just the evidence supporting the decisions of the Commissioner.

12  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

13       A decision supported by substantial evidence still will be set aside if the

14  proper legal standards were not applied in weighing the evidence and making a

15  decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

16  1988).  Thus, if there is substantial evidence to support the administrative findings,

17  or if there is conflicting evidence that will support a finding of either disability or

18  nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

19  812 F.2d 1226, 1229–30 (9th Cir. 1987).

20  / / /

21  / / /

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR
ADDITIONAL PROCEEDINGS ~ 8

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### *Sequential Evaluation Process*

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520. Step one determines if they are engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii).

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 9

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that they have performed in the past. If the claimant can perform their previous work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering their residual functional capacity and age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents them from engaging in their previous occupation. *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

Plaintiff's brief raises the following issues regarding the ALJ's decision:

1. Did the ALJ fail to properly develop the record in declining to order neurocognitive testing?
2. Did the ALJ erroneously evaluate medical source opinions?
3. Did the ALJ erroneously discount Plaintiff's subjective symptom statements?

***Duty to Develop the Record***

Plaintiff argues that the ALJ failed to properly develop the record by neglecting to order neurocognitive testing for Plaintiff. ECF No. 11 at 6. Plaintiff asserts that both Dr. Porchia and examining psychologist Terilee Wingate, PhD both opined that neurocognitive testing was needed to properly evaluate the effects of Plaintiff's cerebrovascular incident. *Id.* (citing AR 97, 100, and 1374–75). Plaintiff adds that the ALJ "cited to the lack of formal memory testing to reject Dr. Porchia's

and Dr. Wingate's opinions about the possibility of a neurocognitive disorder." *Id.* (citing AR 55, 57).

The Commissioner responds that the ALJ's duty to further develop the record was not triggered here because there was no ambiguous evidence, and the record was sufficient to allow for proper evaluation of the evidence. ECF No. 15 at 3. The Commissioner elaborates that Dr. Wingate's June 2020 "provisional" diagnosis was the only indication or assessment of neurocognitive disorder in the record, and in October 2020 a consultative examiner, Ryan Agostinelli, P.A.-C., described Plaintiff as having intact memory, concentration, and general fund of knowledge. *Id.* at 5–6 (citing AR 1379). The Commissioner continues that Dr. Porchia testified that a review of Plaintiff's longitudinal record led her to conclude that Plaintiff "really didn't have any psychiatric problems going on" and that with respect to neurocognitive disorder, Dr. Porchia merely opined that Plaintiff could "'perhaps' have 'mild neurocognitive disorder,' but there had been no testing to support that" and, further, that Plaintiff's record showed no psychiatric history and no psychiatric medication for complaints related to memory, concentration, or any other related symptoms *Id.* at 6 (citing AR 97–98). Moreover, the Commissioner asserts that "it was Plaintiff's responsibility to prove his claim and to provide any supporting evidence." *Id.* at 3 (citing 20 C.F.R. § 404.1512; *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits.").

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 12

Plaintiff replies that Dr. Wingate's provisional diagnosis, Dr. Wingate's recommendation for testing, and Dr. Porchia's agreement with Dr. Wingate all demonstrate that the record was not fully and fairly developed. ECF No. 16 at 2. Plaintiff maintains that Ninth Circuit authority establishes that "an ALJ's duty to develop the record further is triggered by a medical expert's concerns that the record is not adequate or fully developed." *Id.* at 2 (citing *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *Tonapetyan v. Halter*, 242 F.3d 1144, 1050–51 (9th Cir. 2001)).

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]" *Sims v. Apfel*, 530 U.S. 103, 110–11, (2000). The ALJ has an affirmative duty to assist the claimant in developing the record when the record is ambiguous or "inadequate to allow for proper evaluation of the evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2021); *see also Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam) ("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.") (citation omitted). "This duty extends to the represented as well as to the unrepresented claimant." *Tonapetyan*, 242 F.3d at 1150. However, "if the record includes 'specific and sufficient' evidence to evaluate a claim, the record is neither ambiguous nor inadequate." *Slate v. O'Malley*, Case No. 1:23-cv-92-SKO, 2024 U.S. Dist. LEXIS 39281, *15, 2024 WL 967661 (E.D. Cal. Mar. 6, 2024) (quoting *Gurin v. Saul*, 842 F. App'x 45, 58

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 13

(9th Cir. 2021)). An ALJ may discharge her duty by subpoenaing or submitting questions to claimant's doctors, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150.

Dr. Wingate completed a psychological evaluation of Plaintiff on June 17, 2020, and diagnosed Plaintiff with "Neurocognitive Disorder, likely due to cerebral vascular accident (provisional)." AR 1374. Dr. Wingate explained the diagnosis as follows:

> [Plaintiff's] mental status examination reveals memory difficulties and impairment in abstract reasoning. It is likely that his cognitive impairment is due to the [cerebral vascular accident ("CVA")], but he needs memory testing to fully assess his cognitive functioning. The diagnosis of neurocognitive disorder is therefore given provisionally. In addition, he appears to have persistent depressive symptoms. The depression began prior to the CVA, after he was arrested for theft on his job. He continues to report depressed mood, with early morning awakening and low energy. He reported lack of motivation and poor appetite. He tried medications for sleep, but he has not obtained behavioral health intervention for the depression. He would benefit from supportive counseling to address his chronic depression. He also needs memory testing and he may benefit from cognitive rehabilitation services, physical therapy, and occupational therapy. At this time, he doesn't appear capable of working, but further testing is highly recommended.

AR 1374–75.

Testifying medical expert Dr. Porchia acknowledged that Plaintiff's medical record supports that he has "unspecified depressive disorder" but further testified:

> My issue with the case is that I do agree with the psych eval that was conducted in June of 2020, which is 9F, but we don't have objective

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 14

> memory testing to fully assess his cognitive functioning. So, some of the claimant's problems with his memory and some of the mood disturbance could have been, you know, related to the – the cerebrovascular accident, like a stroke. And perhaps, he – he could have a mild neurocognitive disorder, but I wouldn't exactly say that, because this psych eval is only one occasion in which the claimant was observed, and there isn't any psych testing to really determine the severity of the claimant's cognitive functioning.

AR 97.

Dr. Porchia testified that the psychological evaluation was "basically" the only record indicating "findings with regards to memory" "because the claimant doesn't have a psych history, actually." AR 97. Dr. Porchia explained that the memory problems that Plaintiff reported "could be consistent with just having had – you know, just knowing that you have medical problems." AR 98. Dr. Porchia cited some findings regarding memory within normal range in mental status examinations, but she noted that there had not been any "true memory evaluation" of Plaintiff. AR 99. Therefore, Dr. Porchia testified, she could not say "with medical certainty" whether Plaintiff would have difficulty learning new complex information. AR 99–100. When the ALJ asked Dr. Porchia to "do her best" with the record as it was and evaluate the paragraph B criteria, Dr. Porchia gave opinions as to Plaintiff's limitations in each functional category but qualified her response by stating "But again, it – it would be great to have additional psych testing, especially memory testing." AR 100.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 15

      The ALJ found in her decision that Dr. Wingate's "provisional" assessment of neurocognitive disorder was the only "assessment or indication of possible neurocognitive disorder in the record, and as the psychologist advised, further memory testing would be required to fully assess/confirm the diagnosis." AR 52 (citing AR 1373–74). With respect to Dr. Porchia, the ALJ recognized that Dr. Porchia testified that Plaintiff had reported problems with memory and other psychological issues, but the record lacked testing or evaluation to establish a psychiatric condition aside from depressive symptoms. AR 52–53.

      Both Dr. Wingate and Dr. Porchia highlighted that Plaintiff's record lacked testing or evaluation that would have allowed them to opine as to whether Plaintiff has a condition affecting his memory and other cognitive functions, and both medical sources identified the need to test Plaintiff's memory. AR 97–100, 1373–74. The ALJ also acknowledged the lack of memory testing in the record, but nonetheless proceeded to formulate Plaintiff's RFC without the supplementation that Dr. Wingate and Dr. Porchia sought. Neither the ALJ's decision nor the Commissioner's brief before this Court identifies specific and sufficient evidence to evaluate Plaintiff's claim with respect to potential memory issues following his cerebrovascular incident. *See Gurin*, 842 F. App'x at 58.

      Accordingly, the Court agrees with Plaintiff that Dr. Wingate's report and Dr. Porchia's testimony establishes an inadequacy or ambiguity in Plaintiff's record. Furthermore, as the ALJ determined that Plaintiff is capable of

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 16

concentrating on and understanding, remembering, and carrying out simple, routine tasks in his RFC, a more complete assessment by medical sources of Plaintiff's memory and other cognitive abilities could have resulted in a revised RFC and, potentially, a different disability determination. Therefore, the ALJ legally erred by failing to fully develop the record, and the error is not harmless. *See Ponce v. Colvin*, 2015 U.S. Dist. LEXIS 97070, 2015 WL 4511335, at *4 (C.D. Cal. July 24, 2015) (finding error not harmless where the record lacked supplemental treatment records and the court could not "determine whether the failure to develop the record was ultimately prejudicial"); *Sarah M.M. v. Kijakazi*, Case No. CV 20-5273 PVC, 2022 U.S. Dist. LEXIS 14580, at *13–14 (C.D. Cal. Jan. 26, 2022) (same).

Although Plaintiff also raises issues concerning the treatment of medical source opinions, it is unnecessary to reach these arguments because the matter is remanded for the alternative reason of further development of the record. Nevertheless, on remand, the ALJ may consider Plaintiff's other arguments.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision contains harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Brief, **ECF No. 11**, is **GRANTED**.

2. Defendant the Commissioner's Brief, **ECF No. 15**, is **DENIED**.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 17

3. The decision of the Commissioner is **REVERSED**, and this matter is **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Order.

4. Judgment shall be entered for Plaintiff.

5. The District Court Clerk shall amend the docket in this matter to substitute Martin O'Malley as the Commissioner of the Social Security Administration.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

**DATED** March 14, 2024.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
Senior United States District Judge

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 18